## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| RICHARD R. QUICHOCHO, | CIVIL CASE NO. CV0429-21 |
| Plaintiff, | |
| vs. | |
| JOSEPH S. CARBULLIDO, Acting Director of the Department of Corrections, in his Official Capacity; | DECISION AND ORDER RE DEFENDANT BRENNAN'S MOTION TO DISMISS |
| SAMANTHA J. BRENNAN, Former Director of the Department of Corrections, in her Official and Personal Capacity; | |
| ANTONE F. AGUON, Major, Operations Commander of the Department of Corrections, in his Official and Personal Capacity; | |
| MARK PEREZ, Case Social Worker Division Administrator of the Department of Corrections, in his Official and Personal Capacity; | |
| PATRICIA TAIMANGLO, Psychologist of the Department of Corrections, in her Official and Personal Capacity; | |
| MARK ANDERSON, Physician of Guam Memorial Hospital, in his Official and Personal Capacity; | |
| DENNIS CRUZ, Nurse of Guam Memorial Hospital, in his Official and Personal Capacity; | |
| LILLIAN POSADAS, Administrator of Guam Memorial Hospital, in her Official and Personal Capacity, | |
| Defendants. | |

This matter came before the Honorable Dana A. Gutierrez on February 27, 2024 upon a Motion to Dismiss under GRCP 12(b)(6), (5), and (1) ("Motion to Dismiss" or "MTD"), filed by Defendant Samantha J. Brennan ("Brennan"). Present at the hearing was Deputy Attorney General Graham Botha representing Brennan and Plaintiff Richard R. Quichocho ("Quichocho") with counsel Assistant Public Defender David Highsmith. Upon review of the arguments and applicable Guam law, the Court issues the following Decision and Order.

## PROCEDURAL BACKGROUND

On May 25, 2021, Quichocho filed his Civil Complaint. With leave of court, on September 7, 2021, Quichocho filed his First Amended Complaint (also referred to as "FAC").[1]

On May 27, 2021, Quichocho filed his Motion for Service of Process by Marshals, which the Court granted on June 25, 2021, ordering that "the Marshals of the Superior Court of Guam shall serve **all documents** filed by Quichocho upon each Defendant named in the above-captioned case and shall make proof of such service as provided in Rule 4(1) of the GRCP." (emphasis in original). Order Granting Motion for Service of Process by Marshals ("Order for Marshal Service") at 2 (June 25, 2021).

Brennan filed her Motion to Dismiss on February 14, 2022. Quichocho filed his Opposition to Brennan's Motion to Dismiss ("Opposition") on March 22, 2022. Brennan filed her Reply Brief

---

[1] On July 12, 2021, Quichocho filed a Motion to Amend Civil Complaint. On July 23, 2021, the Court issued an Order Re Motion to Amend Civil Complaint, allowing Quichocho to file his First Amended Complaint by August 27, 2021. Quichocho filed his First Amended Complaint on September 7, 2021. On September 17, 2021, Brennan filed a Motion for Default; Renewed Motion to Dismiss ("Motion for Default"). Brennan argued that she was entitled to default because Quichocho's First Amended Complaint was filed untimely. On January 13, 2022, the Court issued its Decision and Order Denying Motion for Default, finding that Quichocho's controlling pleading is his First Amended Complaint, and ordering Brennan to file a responsive pleading and/or any motions regarding the First Amended Complaint within thirty (30) days.

2

in Support of Her Motion to Dismiss ("Reply") on March 28, 2022.[2]

From the onset of this case until July 3, 2023, Quichocho appeared in this matter *pro se*.[3] However, on July 3, 2023, the Court issued its Order Granting Appointment of Counsel For Limited Purposes ("Order Appointing Counsel"), specifically to address Quichocho's request for immediate medical care and to address Brennan's Motion to Dismiss. On August 4, 2023, the Court issued a Notice of Court Appointed Counsel For Limited Purposes to the Public Defender Service Corporation ("PDSC").[4]

At the Status hearing on October 27, 2023, Attorney Highsmith requested that the Court accept Quichocho's Opposition, but to allow Attorney Highsmith to supplement the opposition with additional legal arguments. Min. Entry, 1:38 PM (Oct. 27, 2023). Hearing no objection from opposing counsel, the Court granted Attorney Highsmith leave to file a supplemental pleading by November 6, 2023, and allowed Attorney Botha to file a response by November 20, 2023. Attorney

---

[2] On March 22, 2022, Quichocho also filed a Motion to Strike Brennan's Motion to Dismiss, arguing predominantly that Brennan's Motion to Dismiss was "unsigned/certified by Brennan or legal representative." Mot. to Strike at 1. On April 6, 2022, Quichocho filed his Notice/Request For Withdrawal of Plaintiff's Motion to Strike.

[3] On December 31, 2020 and May 25, 2021, Quichocho filed his Notice and Motion for Appointment of Counsel. On November 9, 2021, the Court issued its Decision and Order Denying Motion for Appointment of Counsel, denying Quichocho's motion without prejudice, and stating that Quichocho may file a new motion for appointment of counsel if he is able to demonstrate circumstances necessary to warrant appointment of counsel. On December 10, 2021, Quichocho filed his Motion for Reconsideration, requesting that the Court reconsider its denial of counsel. The Court denied Quichocho's Motion for Reconsideration on October 3, 2022. At the March 14, 2023 Status hearing, Quichocho again raised his need for counsel based on his worsening health, and the Court considered Quichocho's request in light of the information provided by Quichocho.

[4] The Court first issued a Notice of Court Appointed Counsel For Limited Purpose to the Alternate Public Defender on July 3, 2023. On July 26, 2023, Alternate Public Defender Ana Maria C. Gayle filed an *Ex Parte* Motion to Withdraw as Court-Appointed Counsel ("Motion to Withdraw") because the Alternate Public Defender "was not authorized to represent individuals in domestic or civil matters," and because Miscellaneous Rule 1.1.3 of the Local Rules of the Superior Court of Guam requires that the PDSC be appointed as counsel prior to the Alternate Public Defender. Mot. to Withdraw at 1. The Court granted the Motion to Withdraw on August 4, 2023.

3

Highsmith filed a Memorandum in Opposition to Defendant Brennan's Motion to Dismiss ("Supplement to Opposition") on November 6, 2023. Attorney Botha did not file a response. The Court heard oral argument on the Motion to Dismiss on February 27, 2024.[5]

At the February 27, 2024 Motion hearing, the Court inquired about Quichocho's allegation in his First Amended Complaint that his doctor had recommended cataract surgery, but that Quichocho had not received the surgery. Attorney Highsmith confirmed that, to date, Quichocho has still not received the surgery. Based on the discussion at the Motion hearing, the Court issued an Order After Hearing on March 6, 2024, ordering that "Attorney Highsmith and Attorney Botha file an Informational Report after their respective inquiries with Director of DOC and/or any other relevant party regarding the status of [Quichocho's] allegations related to his medical condition(s), including his cataract condition." Order After Hearing at 2 (March 6, 2024). The Informational Reports were due on March 27, 2024. On April 4, 2024, Attorney Botha filed a Submission of Documents Under Seal in response to the Court's Order After Hearing. To date, Attorney Highsmith has not filed an Informational Report.

## FACTUAL BACKGROUND

In his First Amended Complaint, Quichocho alleges the following facts, which are relevant to Brennan's Motion to Dismiss:

1.     Brennan was the former Director of the Department of Corrections ("DOC") in Mangilao, Guam, and resigned from her position on or about November 22, 2019.

---

[5] Oral argument on Brennan's Motion to Dismiss was originally set for December 9, 2022, but was delayed for a variety of reasons. First, Quichocho filed several motions which required attention before hearing the Motion to Dismiss, including his Motion for Reconsideration regarding the Court's denial of counsel, his Motion to Strike the Motion to Dismiss, and his Motion for Leave of Court filed December 14, 2022. Additionally, Quichocho failed to appear at several hearings scheduled related to the Motion to Dismiss.

2.      Quichocho was diagnosed as diabetic by DOC former physician, Dr. Y.K. Chang "years ago," and was prescribed medication. Quichocho was primarily seen by Guam Memorial Hospital ("GMH") attending physician, Dr. Florencio Lizama ("Dr. Lizama"). Quichocho is also occasionally seen by Defendant Dr. Anderson ("Dr. Anderson") for other medical reasons, but not primarily for his diabetes.

3.      In May of 2019, Dr. Lizama recommended that Quichocho change his prescription, and prescribed that Quichocho take Amaryl and Medformin. Dr. Lizama scheduled a lab test to take place at Quichocho's August 2019 diabetic review in order to monitor Quichocho's blood sugar level. Quichocho did not see Dr. Lizama after May 2019. Quichocho was not called for his August 2019 diabetic review.

4.      After his May 2019 appointment with Dr. Lizama, the infirmary staff issued Quichocho his Amaryl and Medformin, which Quichocho self-administered. About two weeks later, Quichocho suffered from severe stomachaches daily, lasting over two weeks. Quichocho concluded that Amaryl was the cause of his pain. After three weeks of pain, Quichocho discontinued taking Amaryl with the intention of consulting Dr. Lizama in August 2019.

5.      In July or August of 2019, Quichocho experienced recurring severe earaches and swelling of his neck.

6.      At an unknown date, Quichocho was summoned for an unscheduled sick-call for his annual physical checkup by Dr. Anderson. At the physical, Dr. Anderson did not have Quichocho's medical records. Quichocho requested that Dr. Anderson examine his ear due to his pain. Dr. Anderson checked Quichocho's ear and stated that it was not swollen nor infected, and that it was clear of wax buildup. Dr. Anderson told Quichocho to return if the pain reoccurs. Dr. Anderson did not address Quichocho's diabetes.

7.     On August 13, 2019, Quichocho visited Dr. Anderson for sick-call due to his earache. Dr. Anderson again did not have Quichocho's medical records but had Quichocho's lab results. Dr. Anderson prescribed Quichocho antibiotic eardrops. Dr. Anderson accused Quichocho of not taking his medication and stated that his earache was due to his diabetes, and that Quichocho's sugar level was problematic. Quichocho informed Dr. Anderson that he stopped taking his medication due to stomach pains and wanted to consult with Dr. Lizama. Dr. Anderson explained the consequences of failing to take his diabetes medication, including telling Quichocho that he will die if he does not take his medicine. Dr. Anderson then explained that Quichocho's stomach pains were a result of stomach acid, and that he would prescribe medication for Quichocho to soothe his stomach pains. Dr. Anderson then told Quichocho, "I will make the nurse administer your meds!" FAC at 7. Quichocho replied, "no, no, no . . . I had a good valid reason for not taking my meds. I had stomach pains . . ." *Id.* Quichocho then asked Dr. Anderson if he knew what medicine Quichocho was prescribed. Dr. Anderson replied Medformin, but not Amaryl. Based on Quichocho's description of his August 13, 2019 visit with Dr. Anderson, the interaction was hostile and Dr. Anderson was aggressive. After this visit, Quichocho resumed taking the remainder of his prescribed diabetes medicine which Quichocho had in his possession.

8.     On August 19, 2019, Quichocho submitted a sick-call slip, requesting a refill of his prescription diabetes medicine and an issuance of newly prescribed eardrops. On August 20, 2019, Quichocho received a sick-call slip response from infirmary nurse, Defendant Dennis Cruz ("Cruz"), stating that Quichocho must write a Remedy Request to Defendant Major A.F. Aguon ("Major Aguon").

9.      On August 20, 2019, Quichocho submitted a Remedy Request to Cruz, stating that Major Aguon is a corrections officer, not medical staff, and requesting a reason for withholding Quichocho's medications. Cruz referred Quichocho's request to Major Aguon.

10.      On August 20, 2019, Quichocho also submitted a Remedy Request to Brennan, requesting a copy of his medical records for legal purposes, including records pertaining to his August 13, 2019 physical conducted by Dr. Anderson. To date, Quichocho never received a response to this Remedy Request.

11.      On August 21, 2019, Quichocho submitted a Remedy Request to Cruz, asking whether he was withholding Quichocho's medications. To date, Quichocho has not received a response.

12.      On August 21, 2019, Quichocho submitted a Remedy Request to Dr. Anderson, requesting, for legal purposes, a response as to whether Dr. Anderson was withholding Quichocho's medications. To date, Quichocho has not received a response.

13.      On August 21, 2019, Quichocho submitted a Remedy Request to Brennan, requesting, for legal purposes, a copy of his recent lab results from his medical records.

14.      On August 22, 2019, Quichocho received a Response to his August 20, 2019 Remedy Request from Major Aguon ("Major Aguon's August 22, 2019 Response"), stating that because Quichocho was not compliant when self-medicating, he would receive his medications at the infirmary pill line until he demonstrates compliance with the self-administration medication system.

15.      On August 26, 2019, Quichocho submitted his first grievance ("First Grievance") to Brennan, concerning three issues: (1) his August 13, 2019 physical with Dr. Anderson; (2) Major Aguon's August 22, 2019 Response; and (3) his August 21, 2019 Remedy Request to Dr.

Anderson, to which Dr. Anderson did not reply. Quichocho sent the same First Grievance to Head of GMH, Defendant Lillian Posadas. To date, Quichocho has not received a response to his First Grievance.

16.     On August 27, 2019, Quichocho received a response from Major Aguon regarding Quichocho's August 21, 2019 Remedy Request to Brennan ("Major Aguon's August 27, 2019 Response"), stating that Brennan forwarded his August 21, 2019 Remedy Request to him with instructions to respond. Major Aguon denied Quichocho's request for his medical records, citing:

> Code of Federal Regulations (CFR) 164.524 Section (B)(2)(ii): . . . a correctional institution . . . may deny, in whole or in part, an inmate's request to obtain a copy of protected health information if obtaining such copy would jeopardize the health, safety, security, custody, or rehabilitation of the individual or other inmates, or the safety of any officer, employee, or other person at the correctional institution.

FAC at Ex. D1. Major Aguon suggested that Quichocho submit a sick-call slip to discuss his lab results with medical professionals.

17.     On August 29, 2019, Quichocho submitted a Remedy Request to Major Aguon replying to Major Aguon's August 27, 2019 Response, requesting clarification for denying him a copy of his lab results and requesting an examination of why receiving his lab results would pose any concern for the health and safety of any prisoner. Quichocho did not receive a response.

18.     On August 29, 2019, Quichocho submitted a Remedy Request to Warden Col. A.P. Borja, requesting a copy of the DOC Medical Policy.

19.     On August 29, 2019, Quichocho submitted his second grievance ("Second Grievance"). In response to Major Aguon's denial of Quichocho's request for his medical records, Quichocho indicated that Brennan should not have ordered Major Aguon to respond to Quichocho's Remedy Request because on August 26, 2019 Quichocho filed his First Grievance

regarding Major Aguon, and therefore a conflict of interest existed.

20.  On September 18, 2019, Quichocho received a Memorandum from Brennan in response to Quichocho's Second Grievance, in which Brennan stated that she concurred with Major Aguon's assessment to deny Quichocho his medical records.

21.  On September 18, 2019, Unit Officer R.A.G. Naputi ("Officer Naputi") contacted Case Social Worker Division Administrator, Defendant Mark Perez ("Perez"), who was Quichocho's assigned case worker, to inquire why Quichocho never received a response to his First Grievance. After several days and after Quichocho followed up several times, Perez stated that he did not know what happened to Quichocho's First Grievance and stated that they did not receive the First Grievance nor was it logged. Despite Quichocho showing Perez the First Grievance, Perez offered Quichocho no solution. Quichocho never received any further response.

22.  On or about October 29, 2019, Quichocho had an eye exam. According to Quichocho, Dr. Marjorie DeBenedictis[6] performed the exam and recommended a cataract operation in both eyes.

23.  On December 9, 2019, Quichocho brought to Officer Naputi's attention that Quichocho was experiencing abnormalities in both of his feet. Officer Naputi submitted an Informational Report regarding his observations of Quichocho's feet, including discoloration and swelling. Quichocho also reported pain in his feet and hands.

24.  On December 19, 2019, Quichocho submitted a Remedy Request to DOC Psychologist Defendant Patricia Taimanglo, requesting an appointment for consultation. Quichocho did not receive a response.

---

[6] In his First Amended Complaint, Quichocho refers to the doctor as "Dr. DeBenedictis" and "Dr. DeBenedictus."

25.     On January 10, 2020, Quichocho submitted a second Remedy Request expressing concerns about his mental health. Quichocho again did not receive a response, nor was he seen by a psychologist.

26.     On January 14, 2020, Quichocho submitted a Remedy Request, requesting a follow-up appointment with Dr. DeBenedictis regarding his need for cataract surgery.

27.     On December 11, 2020, Quichocho was called for sick-call by Dr. Anderson, but Quichocho refused to see Dr. Anderson because Quichocho believed there was a conflict of interest in seeing Dr. Anderson due to pending legal issues and also because Quichocho alleged that Dr. Anderson committed a Health Insurance Portability and Accountability Act ("HIPAA") violation regarding another inmate.[7]

28.     On December 16, 2020, Quichocho had a second eye doctor appointment with Dr. DeBenedictis and was informed a second time that he needs cataract surgery.

29.     On January 19, 2021, Quichocho submitted a Remedy Request for another follow-up regarding his cataract surgery. To date, Quichocho received no response to the Remedy Request and Quichocho has not undergone cataract surgery.

30.     On or about July 7, 2021, Quichocho was informed that he was to visit Dr. Anderson for medical treatment. Quichocho refused to go, and insisted that he would see another doctor, but not Dr. Anderson.

---

[7] Quichocho alleges that Dr. Anderson named another inmate and discussed the other inmate's medical condition with Quichocho, and that this is a HIPAA violation. However, Quichocho does not raise the HIPAA violation as a cause of action, but instead as his justification for refusing to visit Dr. Anderson. Therefore, the Court need not address the allegation that Dr. Anderson committed a HIPAA violation in order to analyze Brennan's Motion to Dismiss.

## DISCUSSION

### 1.     Quichocho Seeks Relief Under 42 USC § 1983

In his First Amended Complaint, Quichocho states that he is "seeking declaratory judgment, damages, and injuncti[ve] relief under 42 USC § 1983, alleging violations of the First Amendment right to petition the government for redress of grievances; Eighth Amendment protection right from cruel and unusual punishment inflicted, deliberate indifference to medical care; and Due Process and Equal Protection rights of the Fourteenth Amendment to the United States Constitution; law, and statutory rights." FAC at 2. However, in Quichocho's section titled "Claims for Relief," he only names two causes of action: (A) Deliberate Indifference to Serious Medical Needs; and (B) Due Process and Equal Protection Rights Violated. *Id.* at 18, 27.

42 USC § 1983 ("Section 1983") provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"Section 1983 allows an individual to sue a 'person' in their personal capacities if the 'person' violates an individual's constitutional rights while under color of law." *Law Office of Phillips & Bordallo, P.C. v. Birn*, No. 20-00018, 2021 WL 2229037 (D. Guam App. Div. June 2, 2021).

Regarding suing a party in their official capacity, the Supreme Court of the United States has stated that "[n]either the Territory of Guam nor its officers acting in their official capacities are 'persons' under § 1983." *Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990). However, in *Guam Soc. of Obstetricians and Gynecologists v. Ada*, 962 F.2d 1366, 1370 (9th Cir. 1992), the Ninth

Circuit explicitly enumerated an exception to that rule, stating a Guam official is a "person" when sued in his or her official capacity for prospective relief.

### 2. Brennan Moves the Court to Dismiss Quichocho's First Amended Complaint

Generally, motions to dismiss are "viewed with disfavor and [are] rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "Dismissal is only proper if it is clear . . . that the complaint could not be saved by any amendment." *Taitano v. Calvo Finance Corp.*, 2008 Guam 12 ¶ 9.

Additionally, *pro se* litigants are afforded "considerable leeway." *San Union, Inc. v. Arnold*, 2017 Guam 10 ¶ 34. Thus, "deference should be given toward a *pro se* party's litigation efforts." *McGhee v. McGhee*, 2008 Guam 17 ¶ 11. The Court shall "provide lenient treatment of those efforts and give the parties every fair opportunity to present their cases." *Linsangan v. Government of Guam*, 2020 Guam 27 ¶ 34. However, "the leniency accorded to pro se litigants generally applies to the liberal construction of their pleadings and is not without limits" and "cannot extend to depriving their opponent of due process." *James D.J. Ji v. Toves*, 2020 Guam 2 ¶ 13.

At times, Brennan appears to advocate that the Court should dismiss Quichocho's First Amended Complaint in its entirety, while other times Brennan argues only to dismiss it against Brennan. *See* MTD at 1 (Brennan stating that she "moves to dismiss this case with prejudice"); *see also* Min. Entry, 10:26 AM (Feb. 27, 2024) (Attorney Botha stating, "as this motion is only to Defendant Brennan . . . we ask to dismiss her in official and personal capacities."). Thus, the Court will first analyze whether to dismiss Quichocho's First Amended Complaint in its entirety, and then whether to dismiss it as against Brennan.

3.    The Court Declines to Dismiss Quichocho's First Amended Complaint in Its Entirety

      a.    The Court Declines to Dismiss Quichocho's First Amended Complaint for Lack of Subject Matter Jurisdiction

Guam Rules of Civil Procedure ("GRCP") Rule 12(b)(1) provides for dismissal when the Court does not have jurisdiction over the subject matter of a claim. Subject matter jurisdiction "can be raised at any time, either by a party or by the court." *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 22. Brennan argues the Court lacks subject matter jurisdiction in this case because: (1) Quichocho lacks standing, (2) Quichocho has failed to exhaust his administrative remedies, and (3) the cause is barred by the statute of limitations.

      i.    Quichocho Has Standing

Brennan argues that Quichocho lacks standing to bring suit because he "has not suffered an invasion of a 'legally protected interest' because Ms. Brennan has not denied him medical care or provided inadequate medical care." MTD at 8.

"If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Taitano v. Lujan*, 2005 Guam 26 ¶ 15. To satisfy the "irreducible constitutional minimum of standing," a plaintiff must: (1) have suffered an injury in fact, (2) demonstrate a causal connection between the injury and the complained-of conduct, and (3) show that a favorable decision by the court will likely redress the injury. *Benavente v. Taitano*, 2006 Guam 15 ¶ 15.

Quichocho has stated that he has suffered an injury in that his medical conditions—diabetes and deteriorating eye health—have progressed significantly. FAC at 19. Quichocho has alleged that the cause of that injury is a lack of medical attention, for which the defendants are responsible, and which amounts to a violation of his constitutional rights. *Id.* Finally, Quichocho's relief requested, which he seeks in the form of money damages and in the form of injunctive relief to

obtain medical care, would redress the injury. Therefore, Quichocho has standing to bring this suit.

### ii. Brennan Failed to Demonstrate that Quichocho Has Not Exhausted His Administrative Remedies

Brennan argues that Quichocho has failed to exhaust his administrative remedies and therefore the Court lacks subject matter jurisdiction. MTD at 9. Quichocho argues that he has exhausted his administrative remedies. FAC at 18.

"Generally, when a statute requires exhaustion of administrative remedies, a party's failure to exhaust deprives the court of subject matter jurisdiction." *Barrett-Anderson v. Camacho*, 2015 Guam 20 ¶ 32. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Section 1997e(a) requires 'proper exhaustion'; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). Failure to exhaust administrative remedies is an affirmative defense with the burden of proof on the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Quichocho attaches as Exhibit N to his First Amended Complaint an "Inmate Request Form" which is meant "[t]o establish inmate procedures on the proper use of the Inmate Request form." FAC at Ex. N. Brennan references Exhibit N, stating that the form explains "the DOC procedure is to submit materials through the chain of command; it is only if the inmate is dissatisfied with the initial response given to him that he is then able to forward a copy of the responded grievance up the chain of command." MTD at 8.

Upon review of the Inmate Request Form, the Court notes the section entitled "Process" states that first an inmate completes the form and then submits it to his "assigned Unit Senior

Officer of the inmate's housing unit. The assigned Unit Senior Officer is to review the request and ensure it is addressed to the proper division or staff member." FAC at Ex. N. Then, the responding staff member shall immediately complete "PART C" of the form, and forward "INMATE'S RECEIPT" to the inmate. *Id.* A response should be made within ten days, excluding weekends and holidays. *Id.* The responding staff member is to ensure the requesting inmate receives the response. *Id.*

Quichocho alleges that he submitted two Grievances as well as numerous Remedy Requests on at least five different dates to various individuals, including Cruz, Dr. Anderson, Brennan, Major Aguon, and Warden Col. A.P. Borja. *Id.* at 8–12. First, the Court notes that at least some of Quichocho's Remedy Requests and Grievances were responded to on their merits, and therefore Brennan cannot claim procedural deficiencies on those Grievances or Remedy Request. *Maddox*, 655 F.3d at 721 ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.").

Further, Brennan has not expressed to the Court to whom Quichocho was required to submit his Remedy Request or otherwise specifically how Quichocho failed to follow procedure. Brennan also did not outline Quichocho's required actions if prison officials do not respond to his Grievances. Additionally, at the Motion hearing, Attorney Botha conceded that Quichocho did exhaust his administrative remedies on certain issues, including those raised in his First and Second Grievances. Min. Entry, 11:05 (Feb. 27, 2024).

However, Attorney Botha argued that Quichocho did not exhaust his administrative remedies on issues regarding any medical issues with Quichocho's eyes. *Id.* Attorney Botha did not elaborate why Quichocho's January 14, 2020 and January 19, 2021 Remedy Requests

15

requesting further examination regarding his cataract surgery did not exhaust his administrative remedies. Further, the Court notes that the Informational Report filed by Attorney Botha regarding Quichocho's eye health stated that Quichocho's cataract surgery was denied.[8] Brennan has not commented on how that impacts Quichocho's exhaustion of administrative remedies, and further it is not clear to the Court whether the denial of his cataract surgery was conveyed to Quichocho. Finally, Brennan has failed to make clear to the Court the procedure which Quichocho had to follow to exhaust his administrative remedies on those claims. Therefore, Brennan fails to meet her burden to show that Quichocho has not exhausted his administrative remedies.

### iii.        The Matter Is Not Barred by the Statute of Limitations

In her Motion to Dismiss, Brennan argues that the one-year statute of limitations outlined in 7 GCA § 11308 is applicable. MTD at 9–10. However, in his Supplemental Opposition, Quichocho argues that 7 GCA § 11308, which governs medical malpractice claims, is not applicable, and instead the two-year statute of limitations in 7 GCA § 11306 applies. Suppl. Opp'n at 5–6. At the Motion hearing, Attorney Botha conceded that 7 GCA § 11308 only applies if Quichocho is alleging medical malpractice on the part of Dr. Anderson or anyone else, but that otherwise 7 GCA § 11306 applies. Min. Entry, 11:12 AM (Feb. 27, 2024). Attorney Highsmith confirmed that Quichocho does not mention medical malpractice, but instead is making a Section 1983 claim. *Id.* at 11:14 AM. Both parties agree that the alleged wrongdoing in this matter occurred within two years prior to Quichocho bringing suit.

"[A]ll [Section] 1983 suits must be brought within a State's statute of limitations for

---

[8] The Court will not disclose any information regarding Attorney Botha's Informational Report that is not pertinent to deciding the instant Motion to Dismiss due to the sensitive nature of the document and the fact that it was filed under seal.

personal-injury actions." *Nance v. Ward*, 597 U.S. 159, 174 (2022). 7 GCA § 11306 provides that actions must be brought within two years ". . . for injury to, or for the death of, a person caused by the wrongful act or neglect of another . . . ."

Because Quichocho's claims fall under Section 1983, the Court shall apply the two-year statute of limitations dictated by 7 GCA § 11306. The first event that Quichocho complains of is his August 13, 2019 physical with Dr. Anderson, and Quichocho filed his Civil Complaint on May 25, 2021.[9] Because all allegations of wrongdoing in this matter took place within two years prior to Quichocho filing suit, the matter is not barred by the statute of limitations.

### b. Brennan Argues that Quichocho Failed to State a Claim

Brennan argues that Quichocho's First Amended Complaint must be dismissed for failure to state a claim under Section 1983. MTD at 11–14.

GRCP Rule 12(b)(6) provides grounds for dismissal for failure to state a claim upon which relief can be granted. The Supreme Court of Guam has articulated the standard for analyzing a Motion to Dismiss under GRCP Rule 12(b)(6) as follows:

> Dismissal under Rule 12(b)(6) is not proper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. When reviewing a claim under this standard, we must, of course, take as true the material facts alleged in the counterclaim, construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor. The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

*First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9 (internal citations omitted).

---

[9] The Court is not making a finding that August 13, 2019 is the date which triggers the beginning of the two-year statute of limitations pursuant to 7 GCA § 11306. Instead, the Court notes that *all* conduct alleged in this matter falls within two years prior to Quichocho filing suit, and thus there is no statute of limitations bar.

GRCP Rule 8(a) requires that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court of Guam has explicitly declined to adopt the heightened pleading standard—the plausibility standard—set forth in U.S. Supreme Court cases. *Ukau v. Fusheng Wang*, 2016 Guam 18 ¶ 27 ("[W]e now decline to adopt the plausibility standard from *Twombly* and *Iqbal*, choosing instead to rely on our traditional interpretation of GRCP 8(a)."). In other words, "Guam law requires only notice pleading, not fact pleading." *Id.* (quoting *Joseph v. Guam Bd. Of Allied Health Exam'rs*, 2015 Guam 4 ¶ 9).

i.      <u>**Quichocho Has Stated a Deliberate Indifference to Serious Medical Needs Claim under Section 1983**</u>

The Eighth Amendment of the U.S. Constitution, which protects against unnecessary and wanton infliction of pain, obliges the government to provide medical care for prisoners. *Egberto v. Nevada Dep't of Corrections*, 678 F.App'x 500 (9th Cir. 2017). "An inmate's complaint of inadequate medical care amounts to a constitutional violation if the inmate alleges 'acts or omissions sufficiently harmful to evidence [of] deliberate indifference to serious medical needs.'" *Jessy v. Palacios*, No. 10-00020, 2010 WL 3702452 (D. Guam App. Div. Sept. 14, 2010) (quoting *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)).

The Ninth Circuit has employed a two-part test for deliberate indifference: "[f]irst, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant[s'] response to the need was deliberately indifferent." *Egberto,* 678 F.App'x at 502–03.

Regarding the first part of the test, the Ninth Circuit identified three situations in which a

medical need is considered serious: "(1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; or (3) the existence of chronic and substantial pain." *Id.* at 503 (internal citations omitted). Regarding the second element of the two-part test, a prison official is deliberately indifferent if the official "knows of and disregards an excessive risk to inmate health and safety." *Id.* (citing *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)). "This requires more than ordinary lack of due care." *Id.*

Quichocho has clearly alleged that he has a serious medical condition. Quichocho states that he has been diagnosed with diabetes which has progressed so severely that it has caused discoloration in his toes and fingers, numbness, stiffness, constant sharp pains, and pain to his kidney. FAC at 16–17. Quichocho has also alleged that a medical doctor has recommended that he have a cataract operation in both eyes because his eyes became progressively opaque and because he suffered from blurred vision. *Id.* at 15.

Further, Quichocho provides a detailed account spanning nearly two years of advising prison officials of his condition and filing numerous Remedy Requests and Grievances, some of which he alleges have gone entirely unanswered. *Id.* at 3–18. Moreover, Quichocho alleges that he needs cataract surgery, but has been unable to schedule it. *Id.* at 15. Quichocho also alleges that he has sought psychiatric care, which he has not received. *Id.* at 17.

Based on Quichocho's allegations, it is possible that Quichocho can prove facts to indicate that certain prison officials had subjective knowledge of the risk of serious harm to Quichocho and disregarded that risk by deliberately ignoring his medical needs. Therefore, temporarily accepting Quichocho's allegations as true, Quichocho has stated a claim regarding Deliberate Indifference to Serious Medical Needs.

19

### ii.      <u>Quichocho Has Failed to State a Claim That His Equal Protection Rights Were Violated under Section 1983</u>

Quichocho alleges that he "has been treated differently from others of general population similarly situated in regards to self-medication system (issue of meds), intentionally and without rational basis states an equal protection claim as a 'Class of One.'" FAC at 29. The Court cannot discern any other argument from Quichocho's First Amended Complaint that would indicate that his Equal Protection rights have been violated.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A class of one equal protection claim is cognizable where a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In *Gov't of Guam v. 162.40 Square Meters of Land More or Less, Situated in Municipality of Agana*, 2011 Guam 17 ¶ 32, the Supreme Court of Guam acknowledged that courts have suggested differing "class of one" standards. Some courts have held that the plaintiff need only demonstrate that he was singled out for treatment different than other prisoners for no legitimate governmental reason. *Id.* (citing *Jackson v. Burke*, 256 F.3d 93, 97 (2d Cir. 2001)). Other courts have required the plaintiff present evidence "not merely of arbitrariness but of malice or ill-will against the plaintiff." *Id.* (citing *Lindquist v. City of Pasadena*, 656 F.Supp.2d 662, 680 (S.D. Tex. 2009)). However, the Supreme Court of Guam found that the facts in *162.40 Square Meters* did not compel it to adopt which "class of one" test to apply, and therefore declined to do so. *Id.*

Even if the Court applies the more lenient standard that Quichocho only needed to demonstrate that he was treated differently for no legitimate governmental reason, Quichocho has

failed to state a claim that his Equal Protection rights were violated. By Quichocho's own admission, Quichocho ceased taking his prescribed medication without consulting a doctor. FAC at 4. Major Aguon clearly dictated a legitimate reason for requiring Quichocho to receive his medication from the infirmary line when he stated "[Quichocho was] non-compliant with self-medication system . . . in order to receive [his] medication, [he is] required to report to the medication (pill) line until [he] can demonstrate compliance with the self-medication system." *Id.* at Ex. B. *See U.S. v. Moore*, 543 F.3d 891, 900 (7th Cir. 2008) ("class-of-one equal protection theory is a 'poor fit' where the challenged governmental action is the product of a broadly discretionary decision-making process . . . class-of-one theory is better suited to those contexts involving 'a clear standard against which departures, even for a single [individual], could be readily assessed.'").

Nevertheless, as stated previously, motions to dismiss are highly disfavored and the Court shall only dismiss Quichocho's First Amended Complaint if it cannot be saved by an amendment. *Gilligan*, 108 F.3d at 249; *Calvo Finance Corp.*, 2008 Guam 12 ¶ 9. Leave to amend shall be "freely given when justice so requires." GRCP Rule 15(a). The Court must review whether certain factors are present which may mitigate against granting leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment may not be granted if "no set of facts can be proved under the amendment that would constitute a valid claim or defense . . . . Denials based solely on futility 'are rare.'" *Hill v. Booz Allen Hamilton, Inc.*, No. 07-00034, 2009 WL 10680868, at *7 (D. Guam App. Div. Jan. 16, 2009).

In this matter, Quichocho amended his Civil Complaint once, but without the benefit of an attorney. The Court does not find, nor does Brennan allege, that Quichocho's failure to state a claim regarding his Equal Protection Clause rights were a result of bad faith or dilatory motive. Further, as explained below, the Court will allow Quichocho to file a Second Amended Complaint which is consistent with this Decision and Order, so whether Quichocho includes an amended version of his Equal Protection claims in his Second Amended Complaint will not cause any additional delay which could prejudice defendants.

Finally, it is not clear to the Court whether an amendment regarding that claim would be futile because it is not clear whether Quichocho's only allegation regarding his Fourteenth Amendment rights is based on Major Aguon's requirement that Quichocho receive his medication from the infirmary rather than via self-medication. Thus, the Court will offer Quichocho an opportunity to allege facts to support that his Equal Protection rights have been violated. *See Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1054 (9th Cir. 2006) (holding "[f]utility of amendment may be shown by Plaintiff's failure to plead additional facts when given the opportunity," and concluding that "Plaintiff should have the opportunity to seek leave to file an amended complaint."). Thus, if he chooses to do so, the Court grants Quichocho leave to include an amended claim of a violation of his Equal Protection rights in his Second Amended Complaint.

### iii.      Quichocho Has Failed to State a Due Process Clause Claim

Quichocho alleges that Major Aguon failed to provide Quichocho with due process by knowingly and intentionally violating DOC policies and ordering Quichocho to take his prescribed medications at the infirmary pill line rather than through the medical self-administration system. FAC at 28.

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Heard v. Chavez*, 699 F.App'x 788, 791 (10th Cir. 2017).

Quichocho has not alleged, and it is not clear to the Court, which protected interest he possesses that triggers due process protections. Therefore, the Court finds that Quichocho has not stated a Due Process Clause claim. Nevertheless, for the same reasons as stated above, the Court will permit Quichocho to amend his Due Process Clause claim if he so chooses.

### iv.    Quichocho Has Failed to State a First Amendment Claim

In the first sentence of his First Amended Complaint, Quichocho states that he is "alleging violations of the First Amendment right to petition the government for redress of grievances." FAC at 2.

"It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Id.* (citing *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005)). The Ninth Circuit set forth five elements to state a First Amendment retaliation claim from a prisoner:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

23

*Id.* "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm." *Id.*

Although Quichocho states that he has a First Amendment claim, in his "Claims for Relief" section of his First Amended Complaint, Quichocho names only: (A) Deliberate Indifference to Serious Medical Needs; and (B) Due Process and Equal Protection Rights Violated. *Id.* at 18, 27. Quichocho does not reference his First Amendment rights or how such rights were violated.

Under his section alleging Deliberate Indifference to Serious Medical Needs, Quichocho claims that defendants Dr. Anderson, Cruz, Major Aguon, and Brennan, after "being informed that plaintiff is to pursue legal rights, retaliated, failing to provide medical care to plaintiff by withholding, delaying and denying plaintiff of medical care." FAC at 21. However, the Court declines to speculate whether that is Quichocho's statement of the facts showing that he is entitled to relief under the First Amendment. Even if that were Quichocho's statement of the claim, it would be insufficient because he fails to allege that a state actor took adverse action against him for filing a prison grievance.

Therefore, the Court finds that Quichocho has not sufficiently complied with GRCP 8(a) to state a First Amendment claim. Nevertheless, for the same reasons that it will allow Quichocho to amend his Fourteenth Amendment claim, the Court will allow Quichocho to amend his First Amendment claim in his Second Amended Complaint if he so chooses.

### 4.     The Court Dismisses Quichocho's First Amended Complaint Against Brennan

#### a.     The Court Dismisses Quichocho's First Amended Complaint Against Brennan in Her Official Capacity

In his First Amended Complaint, Quichocho names Brennan in her official and personal capacities. At the Motion hearing, Attorney Botha argued that the relief that Quichocho seeks from

Brennan in her official capacity is unattainable because Brennan is no longer in that official capacity. Min. Entry, 10:50 AM (Feb. 27, 2024). Attorney Highsmith agreed with Attorney Botha regarding this argument, and stated, "as far as her official capacity, I think that has to go because she's not in an official capacity anymore." *Id.* at 10:48 AM, 10:51 AM.

"When a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party." GRCP 25(d)(1). Based on GRCP 25(d)(1)'s statement that an officer who resigns is substituted by their successor and based on Attorney Highsmith's concession that withdrawal of the First Amended Complaint against Brennan in her official capacity is appropriate, the Court shall dismiss the First Amended Complaint against Brennan in her official capacity.

 **b.**  **The Court Dismisses Quichocho's First Amended Complaint Against Brennan in Her Personal Capacity**

  **i.**  **The Court May Dismiss a Matter Against a Government Officer with Qualified Immunity**

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pangelinan v. Dep't of Corrections*, No. 23-00016, 2023 WL 5276324, at *8 (D. Guam App. Div. Aug. 16, 2023). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Adkins v. Guam Police Dep't*, No. 09-00029, 2010 WL 3385176, at *8 (D. Guam App. Div. Aug. 24, 2010). "The qualified immunity defense

'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the U.S. Supreme Court provided a two-step analysis to determine whether a governmental officer is immune from suit based on the doctrine of qualified immunity. The District Court of Guam described the two-step analysis as:

> The first step is to ask whether [t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? If the answer is no, the analysis ends, with qualified immunity protecting the defendant from liability. However, if the court finds that a constitutional right was violated, then the court must further inquire whether the right was clearly established.

*Adkins*, 2010 WL 3385176, at *9 (internal citations omitted).

Since *Saucier*, the Supreme Court of the United States has withdrawn its mandate that a qualified immunity analysis must proceed under the sequence stated above and held that either question may be addressed first in the inquiry. *Id.* (citing *Pearson v. Callahan*, 129 S. Ct. 808 (2009)).

### ii.     Brennan Has Qualified Immunity Regarding Quichocho's Deliberate Indifference to Serious Medical Needs Claim

As explained above, Quichocho has failed to state a claim that any Defendant in this matter has violated his First or Fourteenth Amendment rights. However, Quichocho stated a claim that his Eighth Amendment right to medical treatment has been violated.

As stated, a public official may violate a prisoner's right to medical care if the plaintiff shows (1) that he has a serious medical condition which, without treatment, could result in significant injury; and (2) that the defendant knows of and disregards an excessive risk to inmate health and safety, which requires more than ordinary lack of due care. *Egberto*, 678 F.App'x at

502–03.

The conduct that Quichocho alleges regarding Brennan is summed up as follows: (1) Brennan never responded to Quichocho's August 20, 2019 Remedy Request, in which he requested, for legal purposes, records of his sick-call and physical from August 13, 2019; (2) Brennan ordered Major Aguon to respond to Quichocho's August 20, 2019 Remedy Request, which was allegedly improper because a conflict of interest existed; (3) Brennan agreed with Major Aguon's August 22, 2019 Response to Quichocho's August 20, 2019 Remedy Request, requiring Quichocho to receive his medication at the infirmary pill line until he demonstrates compliance with the self-administration medication system; and (4) Brennan did not respond to Quichocho's First Grievance. Accepting all of these facts as true, and weighing them in favor of Quichocho, none of these allegations amounts to deliberate indifference of a serious medical need.

First, in Quichocho's words, his August 20, 2019 Remedy Request to Brennan was to obtain his medical records *for legal purposes*. Failing to respond to that Remedy Request is not a deprivation of medical care because the request was not for medical care. Second, ordering Major Aguon to respond to Quichocho's Remedy Request also did not strip Quichocho of medical care. Further, it is not clear to the Court what conflict of interest Quichocho alleges prevented Major Aguon from answering, and more importantly, the prison's policy on when a conflict of interest prevents an officer from responding to a Remedy Request.

Third, Brennan agreeing that Quichocho had to receive his medication at the infirmary pill line rather than using the self-administration medication system again does not amount to an indifference toward medical needs because Quichocho was being offered his medication, even if he was not satisfied with the method of acquiring it. Finally, Brennan's lack of response to the First Grievance is, again, not a denial of medical care because his First Grievance was not a request

27

for medical care but instead was about his dissatisfaction with the way Dr. Anderson had treated Quichocho. Notwithstanding the above, Quichocho seems to admit that Brennan may have never received his First Grievance because Quichocho stated that Perez did not know what happened to the First Grievance. FAC at 13.

Although Quichocho may be dissatisfied with the medical care he has received, Brennan did not deprive him of medical care. Based on Quichocho's allegations, during Brennan's tenure, Quichocho was offered and denied sick-call several times to see Dr. Anderson. Quichocho was also offered medication through the infirmary pill line but declined. Even when viewing the facts in the light most favorable to Quichocho, Brennan did not violate Quichocho's constitutional rights, and therefore Brennan is protected by qualified immunity. The Court need not further inquire whether the right was clearly established. *Adkins*, 2010 WL 3385176, at *9.

### 5. Quichocho Must Properly Serve His Second Amended Complaint

Brennan argues that Quichocho's Amended Complaint should be dismissed as against Brennan pursuant to GRCP Rule 12(b)(5), which allows the Court to dismiss a complaint for ineffective service of process, because Quichocho failed to properly serve Brennan pursuant to GRCP Rule 4(i). MTD at 5.

The Court need not analyze Brennan's argument to dismiss Quichocho's First Amended Complaint for ineffective service of process because it is dismissed against Brennan for the aforementioned reasons.[10] Further, if Quichocho files a Second Amended Complaint, he must serve the Second Amended Complaint and Summons to any person which he names as a defendant in his Second Amended Complaint in accordance with the GRCP and any other applicable Guam

---

[10] The Court has not made a finding regarding whether Quichocho's First Amended Complaint was properly served on Brennan or any other defendant.

rules or law. Therefore, at this time, the Court will not address whether service of his First Amended Complaint to any other defendant was proper.

### 6. The Court Extends Appointment of Counsel for Limited Purposes

As explained in the Court's July 3, 2023 Order Appointing Counsel, the Court has discretion to appoint counsel for indigent plaintiffs in Section 1983 actions and should ask "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury itself." Order Appointing Counsel at 6. The Court further stated that "when the plaintiff alleges issues pertaining to his eye health, the court can review whether it is practical for the inmate to proceed *pro se,* considering the severity of the eye [condition] and the prejudice the plaintiff will face because of the lack of counsel." *Id.* at 7 (citing *Dewitt v. Corizon, Inc.,* 760 F.3d 654, 657 (7th Cir. 2014)). Therefore, as a result of Quichocho's representation regarding his inability to see clearly and his deteriorating eye health, the Court appointed legal counsel for the limited purpose of addressing Quichocho's medical care and assisting with Brennan's Motion to Dismiss. *Id.* at 7–9.

At the Motion hearing, Quichocho and Attorney Highsmith confirmed that Quichocho "has needed cataract surgery for two years and has not gotten it." Min. Entry, 11:24 AM (Feb. 27, 2024). Further, as noted, Attorney Botha's Informational Report indicates that Quichocho's cataract surgery has been denied, although it is not clear to the Court whether that information was communicated to Quichocho or Attorney Highsmith prior to Attorney Botha filing the Informational Report. Additionally, Attorney Highsmith has not filed an Informational Report regarding Quichocho's health.

Based on the information that has been provided to the Court, issues concerning Quichocho's current health status, including his representation regarding his inability to see clearly

which affects his ability to represent himself, remain unresolved. Further, PDSC has not demonstrated that they have fulfilled the limited purpose of their representation to address Quichocho's medical care. Therefore, it remains necessary that PDSC continue to assist Quichocho to address his medical needs, and further that it remains impractical for Quichocho to proceed *pro se* due to his reported deteriorating eye health. Thus, the Court finds that it is within its discretion to extend the appointment of legal counsel for Quichocho in this matter. The Court extends the limited scope of counsel, and PDSC shall continue to represent Quichocho until further notice of the Court.

## CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1.      Quichocho states an Eighth Amendment Deliberate Indifference to Serious Medical Needs claim;

2.      Quichocho fails to state a claim regarding his First and Fourteenth Amendment rights; *however*, Quichocho may amend his First and Fourteenth Amendment claims in a Second Amended Complaint, which must be filed within **thirty (30) days** of the issuance of this Decision and Order;

3.      Quichocho's First Amended Complaint as against Brennan in her official capacity is **DISMISSED with prejudice**;

4.      Quichocho's First Amended Complaint as against Brennan in her personal capacity regarding the Eighth Amendment Deliberate Indifference to Serious Medical Needs claim is **DISMISSED with prejudice**; [11]

---

[11] Because the Court is granting Quichocho leave to amend his First and Fourteenth Amendment claims in

5.      Any Second Amended Complaint filed must be consistent with this Decision and Order;

6.      If Quichocho files a Second Amended Complaint, he must issue a Summons to any defendant named in his Second Amended Complaint; and Quichocho must ensure that each defendant named in his Second Amended Complaint is properly served in accordance with Guam rules and/or law, as applicable;

7.      The failure to file a Second Amended Complaint within **thirty (30) days** of the issuance of this Decision and Order may result in the dismissal of Quichocho's First and Fourteenth Amended claims with prejudice; and

8.      PDSC shall continue to represent Quichocho until further notice of the Court.

**SO ORDERED**: _____JUN 0 3 2024_____ .

_____
**HONORABLE DANA A. GUTIERREZ**
Judge, Superior Court of Guam

---

his Second Amended Complaint, Quichocho is not barred from including Brennan as a defendant regarding those claims.